**ORIGINAL**

1   DICKEY GAINES (Pro Se)

2   858 Beyer Way, Apt. K-2

3   San Diego, California 92154

4   619.575.1079

FILED

2008 MAY 22 AM 9:07

CLERK, US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____KNY_____DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SAN DIEGO DIVISION

DICKEY GAINES,                          )
                                        )
            Plaintiff,                  )
                                        )   Case No:   **'08 CV 0907 DMS AJB**
        vs.                             )
                                        )   CIVIL COMPLAINT AND JURY DEMAND
PACIFIC HOSPITALITY GROUP INC.,         )
                                        )
BEST WESTERN HACIENDA HOTEL,            )
                                        )
BRIAN HARKINS, LUIS BARRIOS,            )
                                        )
RODRIGO GARCIA, ROBERT SNEE,            )
                                        )
EMY EUFRACIO, GREG BROWNEN,             )
                                        )
FRED GRAND, WILLIAM McWETHY,            )

JOHN DOES,

            Defendants,

_____

## CIVIL COMPLAINT AND JURY DEMAND

**NATURE OF SUIT:**

**(1).** This is a civil action seeking monetary damages, declaratory and injunctive relief to redress deprivation of rights secured pursuant to Title VII of the Civil Rights Act of 1964, (Title U.S.C. Section 2000e et seq); Title 42 U.S.C. Section 1981; Title

RACIAL DISCRIMINATION SUIT - 1

1  42 U.S.C. Section 1981a; Title 29 U.S.C. Section 623 et seq; Title 42 U.S.C. Section

2  1985(3); Title 42 U.S.C. Section 1986; Title 42 U.S.C. Section 1983; Civil Rights Act

3  of 1991, Pub. L. 102-166, enacted on November 21, 1991; Title 28 U.S.C. Section

4  2201-2202 and Rule 57 of the Federal Rules of Civil Procedure and various legal

5  claims arising under State and common law, including but not limited to, employment

6  race-based intentional discrimination under California Fair Employment And Housing Act

7  (California Government Code 12900 et seq); intentional infliction of emotional distress;

8  fraud; negligent retention; negligent training and supervision; defamation; invasion of

9  privacy and negligent hiring.

10

11  ## JURISDICTIONAL PREREQUISITES AND VENUE

12  **(2).** This court is conferred jurisdiction to entertain this civil action pursuant to Title 28

13  U.S.C. Section 1331, Title 28 U.S.C. Section 1343(3), and this court is vested with

14  supplemental jurisdiction to adjudicate all State law claims alleged herein under Title 28

15  U.S.C. Section 1367 that derive from the same nucleus of operative facts as the federal

16  claims. The venue is proper pursuant to Title 28 U.S.C. Sections 1391 (B)(1) and 1391

17  (B)(2) as all acts and omissions complained of occurred within this judicial district and

18  all parties reside within such judicial district.

19

20  ## PARTIES TO CIVIL ACTION

21  **PLAINTIFF:**

22  **(3).** Dickey Gaines is a natural born citizen of the United States and is of African

23  ancestry. At all times relevant to this civil action, Dickey Gaines lived in San Diego,

24  California and was employed as the "Crew Leader" of the Landscaping Department, the

25  Best Western Hacienda Hotel, 4041 Harney Street, San Diego, California 92110 from

26  July of 2005 until October 31, 2007. Dickey Gaines was 48 years of age at the time,

27  which he was driven from employment at the Best Western Hacienda Hotel.

28

RACIAL DISCRIMINATION SUIT - 2

**DEFENDANTS:**

**(4).** Pacific Hospitality Group Inc., is a San Diego, California based corporation, located at 11250 El Camino Real, Suite 100, San Diego, California 92130, duly incorporated on December 4, 2003, **No. C2437465**, under the laws of the State of California. Pacific Hospitality Group Inc., is the parent company of Best Western Hacienda Hotel, 4041 Harney Street, San Diego, California 92110. Pacific Hospitality Group Inc., is being sued in its individual and official capacity. Pacific Hospitality Group Inc., acted in violation of the law at all times germane to this civil action.

**(5).** Best Western Hacienda Hotel is a subsidiary of Pacific Hospitality Group, Inc., and a member of Best Western International Inc., but is independently owned and operated by Pacific Hospitality Group Inc. At all times relevant to this complaint, Best Western Hacienda Hotel located at 4041 Harney Street, San Diego, California 92110, was managed by Luis Barrios and acted in violation of the law. Best Western Hacienda Hotel is being sued in its official and individual capacity.

**(6).** On information and belief, Brian Harkins is a citizen of the United States and is a White male. At all times relevant to this complaint, Brian Harkins was employed as a "high-ranking official" who held a job title of "Director of Personnel" at Pacific Hospitality Group Inc., 11250 El Camino Real, Suite 100, San Diego, California 92130. Brian Harkins exercised substantial independent authority and judgment over significant aspects of the corporation's business. Also, Brian Harkins is designated as the registered agent for service of process. Brian Harkins is being sued in his individual and official capacity. Brian Harkins acted in violation of the law at all times germane to this civil action.

**(7).** On information and belief, Luis Barrios is a resident alien of the United States and is of Spanish ancestry hailing from the country of Columbia. At all times relevant to

RACIAL DISCRIMINATION SUIT - 3

1   this complaint, Luis Barrios was employed as the "On-Site General Manager" of the

2   Best Western Hacienda Hotel, 4041 Harney Street, San Diego, California 92110. Luis

3   Barrios was responsible for the overall day-to-day operations of the aforementioned hotel.

4   Luis Barrios was a managing agent of Pacific Hospitality Group Inc., and was vested

5   with substantial discretionary authority over decisions that ultimately determined corporate

6   policy. Luis Barrios is being sued in his individual and official capacity. Luis Barrios

7   acted in violation of the law at all time germane to this civil action.

8

9   **(8).** Rodrigo Garcia is a resident alien of the United States and is of Spanish descent

10  hailing from the country of Mexico. At all times relevant to this complaint, Rodrigo

11  Garcia resided in Chula Vista, California and was hired as "Supervisor" of the

12  Landscaping Department, at the Best Western Hacienda Hotel, 4041 Harney Street, San

13  Diego, California 92110, but **sua sponte** appointed himself as "Director" of Landscaping.

14  Rodrigo Garcia was the immediate supervisor of Dickey Gaines and directed his daily

15  work activities. Rodrigo Garcia is being sued in his individual and official capacity.

16  Rodrigo Garcia acted in violation of the law at all times germane to this civil action.

17

18  **(9).** On information and belief, Robert Snee is a citizen of the United States and is a

19  White male. At all times relevant to this complaint, Robert Snee was employed as

20  "Accounting Manager" at the Best Western Hacienda Hotel, 4041 Harney Street, San

21  Diego, California 92110. Robert Snee acted in a quasi-general manager capacity

22  whenever Luis Barrios was not on property. Robert Snee is being sued in his individual

23  and official capacity. Robert Snee acted in violation of the law at all times germane to

24  this civil action.

25

26  **(10).** On information and belief, Emy Eufracio is a resident alien of the United States

27  and is of Spanish ancestry hailing from the country of Columbia. At all times relevant

28  to this complaint, Emy Eufracio was employed as the "Head" of the Housekeeping

1   Department, at the Best Western Hacienda Hotel, 4041 Harney Street, San Diego,

2   California 92110. Emy Eufracio is being sued in her individual and official capacity.

3   Emy Eufracio acted in violation of the law at all times germane to this civil action.

4

5   **(11).** On information and belief, Greg Brownen is a citizen of the United States and is a

6   White male. At all times relevant to this complaint, Greg Brownen was employed as

7   "Chief Engineer" of the Engineering Department, at the Best Western Hacienda Hotel,

8   4041 Hacienda Street, San Diego, California 92110. Greg Brownen. possessed decision-

9   making authority over the Landscaping Department. Greg Brownen is being sued in his

10  individual and official capacity. Greg Brownen acted in violation of the law at all times

11  germane to this civil action.

12

13  **(12).** On information and belief, Fred Grand was employed as "President" of Pacific

14  Hospitality Group, Inc., 11250 El Camino Real, Suite 100, San Diego, California 92130.

15  Fred Grand exercised decision-making authority over the Best Western Hacienda Hotel,

16  4041 Harney Street, San Diego, California 92110. Fred Grand is being sued in his

17  individual and official capacity. Fred Grand acted in violation of the law at all times

18  germane to this civil action.

19

20  **(13).** On information and belief, William McWethy is a citizen of the United States and

21  is a White male. At all times relevant to this complaint, William McWethy was the

22  "Principal Owner" of the Best Western Hacienda Hotel, 4041 Harney Street, San Diego,

23  California 92110, and possessed absolute decision-making authority over its operations.

24  William McWethy is being sued in his individual and official capacity. William

25  McWethy acted in violation of the law at all times germane to this civil action.

26

27  **(14).** John Does are defendants "full names unknown" to the plaintiff at this particular

28  juncture, but were all employees working at the Best Western Hacienda Hotel, 4041

RACIAL DISCRIMINATION SUIT - 5

1  Harney Street, San Diego, California 92110, at the relevant time period of this
2  complaint. All John Does are being sued in their individual and official capacity. All
3  John Does acted in violation of the law at all times germane to this civil action.
4  Consequently, after a reasonable opportunity for discovery pursuant to the Federal Rules
5  of Civil Procedure, (i.e., **Rules 33, 34, and 36**) the plaintiff will learn the full names
6  and other pertinent information regarding all of the John Does, thereby necessitating
7  amendment of the civil complaint to include specific allegations and theories of liability.
8
9  ## STATEMENT OF FACTS
10  **(15).** At all times relevant to this complaint, the vast majority of employees working at
11  Best Western Hacienda Hotel within the Housekeeping, Landscaping and Engineering
12  departments were comprised of people of Latin ancestry.
13
14  **(16).** Undeniably, it is documented that Mexican/Latino culture and people are racists and
15  prejudice against Black people. (**See, Exhibit A - Attached Hereto**)
16
17  **(17).** From the inception of plaintiff's employment until October 31, 2007, the plaintiff
18  (hereinafter "Dickey Gaines") was either the only "Black person" or one of a few
19  working at the Best Western Hacienda Hotel in a non-front desk area of the aforesaid
20  hotel.
21
22  **(18).** Emy Eufracio, a woman of Spanish ancestry, is the "Head" of the Housekeeping
23  department and have on several occasions reported misconduct of employees of the
24  Housekeeping Department, in which, such employees were fired/terminated, but no
25  retaliation was visited upon Emy Eufracio for discharging her duties and responsibilities.
26
27  **(19).** Greg Brownen, a male of Caucasian descent, is the "Chief Engineer" of the
28  Engineering department and have on several occasions reported misconduct of employees

RACIAL DISCRIMINATION SUIT - 6

1  of the Engineering department, in which, such employees were fired/terminated, but no

2  retaliatory measures were visited upon Greg Brownen for discharging his duties and

3  responsibilities.

4

5  **(20).** The Best Western Hacienda Hotel have a **de facto** policy and/or practice of

6  knowingly engaging in the hiring and maintaining of employees of Spanish lineage that

7  are not lawfully in the United States of America. One employee being Ramon Oaxaca.

8

9  **(21).** Dickey Gaines has brought to the attention of the Federal government, specifically

10  the United States Department of Homeland Security, Immigration and Custom

11  Enforcement Division, the hiring of illegal immigrants at the Best Western Hacienda

12  Hotel.

13

14  **(22).** The "Employee Handbook" issued to Dickey Gaines contains a provision

15  which states in pertinent part:

16

17          ". . . In compliance with the Immigration Reform and Control

18          Act of 1986, each new employee, as a condition of employment,

19          must complete the Employment Eligibility Verification Form I-9

20          and present documentation establishing identity and employment

21          eligibility."

22

23  **(23).** Several employees of the Best Western Hacienda Hotel, inclusive of Ramon Oaxaca

24  used fraudulent documents, with the knowledge of Luis Barrios, Robert Snee and Brian

25  Harkins and imputed knowledge to Pacific Hospitality Group Inc., with respect to

26  completion of the I-9 form.

27

28

RACIAL DISCRIMINATION SUIT - 7

1   **(24).** Dickey Gaines was tendered an Employee Handbook at the beginning of his
2   employment with Best Western Hacienda Hotel. The handbook unequivocally provided in
3   relevant part:

4   　　　　　　　　"Company policy forbids retaliation against any employee. . .
5   　　　　　　　　files a complaint, testifies assists or participates in any manner in an
6   　　　　　　　　investigation, proceeding or hearing of a complaint."

7

8   **(25).** Pacific Hospitality Group. Inc., have a policy, regulation, practice, rule, custom and
9   guideline, as clearly stated in its Employee Handbook, which mandates all employees to
10  conduct themselves using common sense and good judgment at all times

11

12  **(26).** Rodrigo Garcia was permitted by the on-site management team, at the Best Western
13  Hacienda Hotel to bring a **"digital camera"** to work and take unauthorized photographs
14  of workers including Dickey Gaines. This type of invasive activity did not occur prior to
15  the hiring of Rodrigo Garcia.

16

17  **(27).** On information and belief, unauthorized photographs taken by Rodrigo Garcia of
18  employees, including Dickey Gaines, were utilized in furtherance of his off-the-job
19  surreptitious activities, diabolical schemes and dissemination of images on employees
20  inclusive of Dickey Gaines.

21

22  **(28).** During the employment of Dickey Gaines, at the Best Western Hacienda Hotel, he
23  was selected as Employee of the Quarter, nominated for Employee of the Year,
24  nominated for Employee of the Quarter and received a Letter of Appreciation.

25

26  ## RAMON OAXACA'S WILLFUL AND WANTON MISCONDUCT

27  **(29).** During the last week of September of 2007, Dickey Gaines observed Ramon
28  Oaxaca, just before the start of the work shift, in the Housekeeping Department of the

Best Western Hacienda Hotel, using a sponge, which employees of the Housekeeping Department utilize to wash their personal utensils and the cups that are placed in the rooms for the hotel guests, to wiped off his dirty work boots.

**(30).** Dickey Gaines repeatedly requested Ramon Oaxaca to stop and explained to him that it was unsanitary to do such thing. Ramon Oaxaca ignored the verbal warnings of Dickey Gaines and insisted that what he was doing is acceptable by the ladies working in the Housekeeping Department. Ramon Oaxaca continued with his pathogenic conduct and Dickey Gaines exited the Housekeeping Department.

**(31).** During the lunchtime break, Dickey Gaines entered the Landscaping Shop, present were Rodrigo Garcia, Ramon Oaxaca and Bernardo Gomez. Dickey Gaines again confronted Ramon Oaxaca regarding his unsanitary conduct of using a sponge to wipe off his dirty work boots, in which, such sponge is designated for cleaning personal utensils and cups for hotel guests.

**(32).** Ramon Oaxaca proceeded to argue that his conduct was not improper and that Dickey Gaines was only picking on him. Rodrigo Garcia shrinked from his responsibility of discharging his obligation of resolving work-related problems by virtue of him running out of the Landscaping Shop without intervention.

**(33).** Ramon Oaxaca had a history of demonstrating contumacious conduct as exemplified by his repeated acts of insubordination and his history of being counseled for poor hygiene.

**(34).** Luis Barrios engaged in Spanish partiality by not imposing disciplinary imprimatur upon Ramon Oaxaca for his modus operandi of prior acts of recalcitrance, excluding the October 2, 2007 disciplinary action.

1    **(35).** The on-site management of the Best Western Hacienda Hotel, under the leadership

2    of Luis Barrios was stringent and without tolerance when exacting disciplinary measures

3    upon Black employees for work-related infractions.

4

5    **(36).** Dickey Gaines submitted a one-page handwritten letter addressed to Luis Barrios

6    germane to the filthy conduct displayed by Ramon Oaxaca with respect to using a

7    cleaning sponge to wipe the dirt from his work boots.

8

9    **(37).** Ramon Oaxaca's work duties required him to walk on banks, in which, insecticides,

10   highly dangerous pesticides and fertilizers were applied.

11

12   **(38).** Prior to October 2, 2007, Rodrigo Garcia advised Dickey Gaines via telephone

13   conversation that a "hearing will be held on October 2, 2007, in relation to the one-page

14   letter which Dickey Gaines tendered to Luis Barrios concerning Ramon Oaxaca's

15   misconduct.

16

17   **(39).** On information and belief, a meeting between Luis Barrios, Emy Eufracio, Rodrigo

18   Garcia and possibly other employees took place prior to October 2, 2007, concerning the

19   prospective handling of the one-page handwritten letter which Dickey Gaines had

20   submitted germane to Ramon Oaxaca's misconduct.

21

22   **GENERAL MANAGER'S ABDICATION OF RESPONSIBILITY**

23   **(40).** Luis Barrios delegated the handling of Dickey Gaines' one-page handwritten letter

24   about Ramon Oaxaca's misconduct to Rodrigo Garcia and Emy Eufracio, two individuals

25   of Spanish ancestry, neither of which had any power to impose discipline upon Ramon

26   Oaxaca.

27

28

1  **(41).** Luis Barrios did not include Greg Brownen in the oversight of Dickey Gaines' one-
2  page handwritten letter pertinent to Ramon Oaxaca's misconduct, even though, Greg
3  Brownen had supervisory power over the Landscaping Department.

4

5  **(42).** The misconduct of Ramon Oaxaca was of serious nature, since it exposed
6  hotel guests and the employees of the Housekeeping Department to substantial health
7  risks.

8

9  ## SPANISH NEPOTISM AND INDIFFERENCE TO MISCONDUCT

10 **(43).** On October 2, 2007, during the morning hours, a meeting was convened in the
11 Housekeeping Department of the Best Western Hacienda Hotel. Present at the meeting
12 were Rodrigo Garcia, Emy Eufracio, Ramon Oaxaca and Dickey Gaines. At the hearing,
13 Dickey Gaines verbally expressed that Ramon Oaxaca's misconduct was an affront to the
14 employees working in the Housekeeping Department, outrageous for the guests of the
15 hotel and represented a blatant disregard for Dickey Gaines' job capacity as Crew
16 Leader.

17

18 **(44).** Rodrigo Garcia and Emy Eufracio, possessing over **100 years** of combined life
19 experience, characterized the misconduct of Ramon Oaxaca as being a mistake! Dickey
20 Gaines protested that the misconduct was willful and wanton and cannot be legitimately
21 deemed a mistake.

22

23 **(45).** Emy Eufracio asked Dickey Gaines, "what do you think should happen to Ramon
24 Oaxaca?" Dickey Gaines replied, "given his history of misconduct - he should be fired."

25

26 **(46).** Rodrigo Garcia and Emy Eufracio informed Dickey Gaines that Ramon Oaxaca's
27 misconduct was not serious and that because of his age as well as him being a Mexican
28 national that lived in Tijuana, Mexico, compassion will be shown. Dickey Gaines

1  protested this compassion position and stated that he will submit something in writing to

2  Luis Barrios and departed the so-called hearing.

3

4  **(47).** Before Dickey Gaines could reduce anything to writing pertaining to the hearing,

5  either Rodrigo Garcia and/or Emy Eufracio, went to Luis Barrios and apprised him of

6  the intent of Dickey Gaines to put something in writing about the hearing.

7

8  **(48).** A master and servant relationship existed between Rodrigo Garcia and Ramon

9  Oaxaca by virtue of Ramon Oaxaca "cleaning the yard of Rodrigo Garcia and doing

10  landscaping/gardening jobs on-the-side together." This type of relationship called into

11  question the integrity of the hearing and compromised the impartiality of the hearing.

12

13                    **LUIS BARRIOS SUSPEND RAMON OAXACA**

14  **(49).** On October 2, 2007, during the afternoon hours, Luis Barrios held a meeting in his

15  office relevant to the one-page handwritten letter composed by Dickey Gaines on the

16  issue of Ramon Oaxaca's misconduct. Present for the meeting were Robert Snee, Emy

17  Eufracio, Dickey Gaines and Rodrigo Garcia.

18

19  **(50).** At the hearing, Dickey Gaines reiterated his position that Ramon Oaxaca's

20  misconduct warranted disciplinary action, especially since Ramon Oaxaca repeatedly

21  ignored the verbal warnings to stop the misconduct. Moreover, Dickey Gaines expressed

22  his displeasure with the Spanish preferential treatment exhibited by Emy Eufracio and

23  Rodrigo Garcia toward Ramon Oaxaca's misconduct.

24

25  **(51).** Luis Barrios agreed with Dickey Gaines inasmuch as concluding that Ramon

26  Oaxaca's misconduct merited disciplinary action. Luis Barrios made a determination that

27  Ramon Oaxaca would be suspended for five (5) days without pay and required to sign

28

1    documentation warning of the consequences of any future misconduct. Ramon Oaxaca

2    was summoned into the office of Luis Barrios and informed of his suspension.

3

4    **(52).** Luis Barrios sensing that Rodrigo Garcia might entertain notions of retaliation

5    against Dickey Gaines for "going over his head with the misconduct issue and getting

6    Ramon Oaxaca suspended" told Rodrigo Garcia in no uncertain terms to "not do

7    anything that will cause a rift between himself and Dickey Gaines."

8

9    **(53).** Luis Barrios knew or should have known that Rodrigo Garcia was an employee that

10   will rebel against authority, based upon his prior employment, in which, predicated upon

11   information and belief, Rodrigo Garcia was compelled to retire or face disciplinary

12   action. Luis Barrios was the person that interviewed Rodrigo Garcia for the job at the

13   Best Western Hacienda Hotel.

14

15   **(54).** Rodrigo Garcia verbally assured Luis Barrios that he would not be engaging in any

16   kind of retaliation against Dickey Gaines as a result of Ramon Oaxaca being suspended.

17   The hearing was adjourned at this juncture.

18

19   ## ONSET OF RACIALLY HOSTILE WORK ENVIRONMENT

20   **(55).** The following day after Ramon Oaxaca got suspended, employees such as, Maria

21   and Roxanna of the Housekeeping Department (their full names unknown, but will be

22   ascertained through discovery) no longer greeted Dickey Gaines with the pleasantry of

23   "good morning" but replaced it with contemptuous looks.

24

25   **(56).** At one point before Ramon Oaxaca returned to work, Dickey Gaines approached

26   Maria and inquired why she no longer spoke to him. Maria replied, "that you got

27   Ramon suspended and Spanish people stick together right or wrong."

28

1   **(57).** A few days after Ramon Oaxaca was suspended, Dickey Gaines asked Roxanna,

2   "why do you have an attitude toward me?"

3

4           Roxanna replied, "you got a Mexicano suspended, you are no longer

5           welcomed amongst the Latin workers, we have been instructed to not talk

6           with you and Rodrigo is going to see to it that you are dealt with."

7

8   **(58).** In the wake of Ramon Oaxaca's suspension, Benjamin, Jose and Abel, all workers

9   of the Engineering Department, started sneering at Dickey Gaines and calling him a

10  trouble-making nigger whenever they would pass him. Additionally, the aforesaid

11  individuals frequently spat in the direction of Dickey Gaines upon passing him.

12

13  **(59).** Benjamin stated to Dickey Gaines, "that he is the only nigger working in the back,

14  Latinos run the Hotel and that you are going to be driven away from working at this

15  hotel."

16

17  **(60).** Dickey Gaines observed Greg Brownen sneering at him on several occasions

18  following the suspension of Ramon Oaxaca.

19

20  **(61).** Shortly after Ramon Oaxaca was suspended, Greg Brownen approached Dickey

21  Gaines, at the Plaza Level of the Best Western Hacienda Hotel and stated:

22

23          "Rodrigo and the Mexicans are out to get you because of what happened to

24          Ramon and I hope they are successful as a younger worker is preferable,

25          especially since you previously accused me of trying to take your job ."

26          Greg Brownen further stated, "I did not participate in that hearing with

27          Emy Eufracio and Rodrigo Garcia on October 2, 2007, because I was instructed

28          not too."

RACIAL DISCRIMINATION SUIT - 14

1  **(62).** After Ramon Oaxaca was suspended, Rodrigo Garcia stopped greeting Dickey

2  Gaines with a good morning and a handshake. Instead, Rodrigo Garcia commenced to

3  speak to Dickey Gaines in a harsh tone of voice, when it came to work which needed

4  to be done around the property. Rodrigo Garcia often approached Dickey Gaines calling

5  him a "coon" and "jungle bunny" and frequently stated, "we need a younger person

6  to be the crew leader and hopefully it will happen."

7

8  **(63).** On one occasion following Ramon Oaxaca's suspension, during the lunch break,

9  Rodrigo Garcia told Dickey Gaines:

10

11       "that he should not have caused Ramon's suspension, should not

12       have went over my head; that Latinos control the Hotel Industry and is

13       protective of each other; that Latinos have a movement to take over California

14       and the Southwestern United States; that a campaign of ethnic cleansing against

15       Black people is underway in Los Angeles and working its way down to all of

16       southern California and elsewhere; that the Spanish employees are angry about

17       what you did; don't expect to be treated like you were before Ramon Oaxaca

18       got suspended;  the United States need Mexican workers so Mexicans have

19       more rights than Black people; that Blacks deserve to be done just like the

20       Germans did the Jews and Black people have no rights that a Mexican or Latinos

21       have to honor, since Black people have second class status in the United States

22       and are considered to be sub-humans and without a job you will not be able

23       to keep that pretty White woman, so she will be will become my mistress,

24       since White women love Mexican men, that is why they always love to travel

25       to Tijuana."

26

27

28

1    **(64).** The Winter 2006 edition of the Intelligence Report, a publication of the Southern

2    Poverty Law Center, vividly documents the racism and murderous conduct displayed by

3    Latinos toward Black people in the State of California.

4

5    **(65).** Rodrigo Garcia related to Dickey Gaines:

6                "that it would do him no good to complain to management about

7            the upcoming nasty treatment he would be receiving, since the Hotel

8            management supported the Spanish cabal wanting your ouster."

9

10   **(66).** After Ramon Oaxaca was suspended, Emy Eufracio told Dickey Gaines:

11

12                "that it would be in his best interest to not communicate with any

13            of the female employees of the Housekeeping Department, since

14            sexual a harassment charge probably will be made against you."

15

16   **(67).** The on-site management of the Best Western Hacienda Hotel along with its parent

17   company have a history of tolerating racial incidents, without taking any meaningful

18   deterring action, as evidenced by the racial happenstance between Rodrigo Garcia and

19   Gary of the in-house construction department. .

20

21   **(68).** The Pacific Hospitality Group Inc., have a policy, regulation, practice, rule, custom

22   and guideline, as promulgated in its Employee Handbook, which expressly prohibited and

23   punished discriminatory and harassing conduct, but failed to enforce it with respect to

24   Dickey Gaines' predicament.

25

26   **(69).** The Pacific Hospitality Group Inc., have a policy, regulation, practice, rule, custom

27   and guideline, as set forth in its Employee Handbook, which pellucidly states:

28

1    "... Anyone found to be engaging in any type of unlawful
2        discrimination will be subject to disciplinary action, up
3        to and including termination of employment."

4

5    **(70).** Alicia (last name unknown to plaintiff) of the Housekeeping Department was
6    friendly with Dickey Gaines. She was not fluent in speaking or understanding the
7    English language. After Ramon Oaxaca returned to work, Alicia warned Dickey Gaines
8    to be careful and gave Dickey Gaines a piece of paper which stated:

9

10        "Rodrigo esta trabajando en algo salir de ese negro."

11

12    **(71).** Dickey Gaines believed that the piece of paper given to him by Alicia to mean
13    that Rodrigo was working on something to get rid of him.

14

15    **(72).** On or about October 10, 2007, Ramon Oaxaca returned to work, during the
16    10:00am morning break, Ramon Oaxaca related to Dickey Gaines:

17

18        "Rodrigo is going to get you back for having me suspended."

19

20    **RODRIGO GARCIA, ROBERT SNEE AND BRIAN HARKINS ACTING IN**
21    **CONCERTED EFFORT AGAINST DICKEY GAINES**

22    **(73).** In September and October of 2007, Robert Snee was part of the on-site
23    management team at the Best Western Hacienda Hotel.

24

25    **(74).** Robert Snee was present during the job interview process of Dickey Gaines
26    conducted by Luis Barrios.

27

28    **(75).** Luis Barrios introduced Robert Snee to Dickey Gaines as his "right hand man."

(76). On several occasions following the suspension of Ramon Oaxaca and his return to work, Dickey Gaines observed Rodrigo Garcia standing in the doorway of the office occupied by Robert Snee.

(77). Dickey Gaines' job capacity required him to carry a walkie-talkie.

(78). On October 17, 2007, during the afternoon hours, Dickey Gaines heard a radio transmission which stated, "base to Rodrigo - Rob want to see you."

(79). Shortly after the radio transmission (**Par. 78, supra**) Dickey Gaines received a radio transmission from Rodrigo Garcia, in which, Rodrigo Garcia stated, "Rob want to see you in his office."

(80). Upon entering the doorway to the office of Robert Snee, Dickey Gaines instantly observed his employment application and resume lying on the desk. Robert Snee related that he is just wearing his emissary hat and that corporate want to know about a 20 year period of time on the resume of Dickey Gaines and whether Dickey Gaines served time in prison.

(81). Dickey Gaines informed Robert Snee that he had served almost 20 years in prison. Robert Snee stated to Dickey Gaines, "the boss will be back Friday and we will see what happens." Dickey Gaines informed Robert Snee that a campaign of harassment had begun against him by co-workers calling him offensive names, such as, killing bastard, ugly nigger, Black sambo, and by sneering at him and giving him contemptuous looks as well as spitting in his direction. Robert Snee did not inquire as to who were the co-workers engaging in this behavior. Instead, Robert Snee just repeated, "the boss will be back Friday."

1  (82). Robert Snee asked Dickey Gaines, "does anybody else on the property know about

2  your background?" Dickey Gaines replied, "not to my knowledge." Robert Snee stated,

3  "that only he and **Brian Harkins** know about it and it will be kept confidential."

4

5  (83). Dickey Gaines questioned the "timing" of the criminal background inquiry by

6  saying to Robert Snee that, "since Ramon Oaxaca got suspended now this is coming up

7  and it seems like retaliation." Robert Snee remained quiet!

8

9  (84). Dickey Gaines had been working at the Best Western Hacienda Hotel for 27

10  months at the time of the inquiry regarding his criminal background. Prior to October

11  17, 2007, nobody of the on-site management team or nobody from the corporate office

12  had ever inquired of Dickey Gaines about the existence of a criminal background.

13

14  (85). Aside from Luis Barrios conducting a job interview with Dickey Gaines, an

15  independent interview was conducted by Fred Grand.

16

17  (86). Luis Barrios often told supervisory employees that Mr. McWethy, the owner, is the

18  one who hired Dickey Gaines as the crew leader of the Landscaping Shop.

19

20  (87). Dickey Gaines was enticed from his job working inside of NASSCO Shipyard by

21  Luis Barrios with the promise of higher pay and opportunity for advancement. It was the

22  intent of Dickey Gaines to work at Best Western Hacienda Hotel for a period of 20

23  years.

24

25  (88). Dickey Gaines suspected that Rodrigo Garcia was the protaganist behind the inquiry

26  into the criminal background of Dickey Gaines which turned out to be true. (**Par. 128,**

27  **infra**)

28

RACIAL DISCRIMINATION SUIT - 19

1    **(89).** The statement of Robert Snee (**Par. 82, supra**) illustrates that Brian Harkins had

2    actual and constructive knowledge of what was taking place.

3

4    **(90).** The job description of Rodrigo Garcia did not encompass anything to do with

5    Human Resources or personnel matters.

6

7    **(91).** On information and belief, Robert Snee shared information about the office files he

8    maintain on all employees at the Best Western Hacienda Hotel with Rodrigo Garcia as

9    such personnel files related to Dickey Gaines.

10

11    **(92).** Commencing October 17, 2007 up to October 29, 2007, Robert Snee embarked

12    upon an importune course of asking Dickey Gaines every time he observed him, "do

13    you have paperwork showing you did not commit the crime."

14

15    **(93).** In between October 17, 2007 and October 29, 2007, Dickey Gaines was repeatedly

16    taunted and jeered by numerous employees of the Best Western Hacienda Hotel, such as

17    Benjamin, Maria, Abel, Roxanna, Rodrigo Garcia, Greg Brownen, Jose, Emy Eufracio

18    and Ramon Oaxaca. The taunting included calling Dickey Gaines a cold-blooded Black

19    ass murderer; Latinos don't want no Black killer working at the hotel; that Dickey

20    Gaines is going to reap what he sown, that no Black ex-convict should have a job

21    period and that the above-mentioned male employees would make a gun-pointing gesture

22    at Dickey Gaines whenever he passed.

23

24    **(94).** Bernardo Gomez informed Dickey Gaines that it was Rodrigo Garcia who told the

25    employees about you being in prison for a long time for killing two men, but that he is

26    not involved with the harassment.

27

28

1  **(95).** Guillermo "Mamo" Guttierrez, a person of Spanish ancestry, while employed at the

2  Best Western Hacienda Hotel was never persecuted, taunted, or villified about his

3  criminal background or police encounters.

4

5  (96). The actions and conduct of Rodrigo Garcia are imputed to Luis Barrios, Fred

6  Grand, William McWethy and Pacific Hospitality Group Inc., since Robert Snee and

7  Brian Harkins had actual and constructive knowledge pertaining to what Rodrigo Garcia

8  was doing, but failed to intercede and put a stop to it.

9

10  **(97).** The actions, knowledge and omissions by Robert Snee are imputed to Luis Barrios

11  and Pacific Hospitality Group Inc., since Robert Snee acted on Luis Barrios' behalf

12  during his absence.

13

14  **(98).** The actions, knowledge and omissions by Brian Harkins are imputed to Fred Grand,

15  William McWethy and Pacific Hospitality Group, Inc., since Brian Harkins had actual

16  and constructive knowledge of what was taking place and failed to do anything to stop

17  it.

18

19  **(99).** On October 29, 2007, during the morning hours, Dickey Gaines was working with

20  Rodrigo Garcia, at the 600 building near the dumpster area shoveling gravel into a large

21  bag, for transport to the nursery area section in the rear of the swimming area.

22

23  **(100).** A female employee working the Front Desk radioed to Rodrigo Garcia,

24  "that Rob Snee want to see you in his office." There was no response from Rodrigo

25  Garcia after several radio calls. Dickey Gaines got on his walkie-talkie and stated,

26  "this is Dickey, can I be of help to you?" A female voice from the Front Desk said,

27  "Dickey, tell Rod that Rob want to see him in the office." Dickey Gaines replied, "I

28

1  will relay the message when I see Rodrigo." Shortly thereafter, Dickey Gaines received a

2  radio transmission from Rodrigo Garcia asking him to come down to the Housekeeping

3  area and pick-up the dolly, as he was going to see what Rob wanted.

4

5  **(101).** After Dickey Gaines took the dolly to the dumpster area and continued shoveling

6  gravel into a large bag, Robert Snee suddenly emerged from the elevator and approached

7  Dickey Gaines.

8

9  **(102).** Robert Snee said, "Dickey, can you get me something in writing saying you was

10  not the triggerperson." Dickey Gaines replied, "there is a published legal opinion and I

11  will bring it to work and give to you." Robert Snee said, "thanks Dickey and caught

12  the elevator back downstairs."

13

14  **(103).** At this juncture, Dickey Gaines deduced that Rodrigo Garcia was undoubtedly

15  responsible for bringing up the criminal past of Dickey Gaines and that Robert Snee and

16  Rodrigo Garcia had worked in concerted effort to poison the work environment insofar

17  as creating a hostile working environment for Dickey Gaines.

18

19  **(104).** The deducibility became clear when Robert Snee emerged from the elevator and

20  approached Dickey Gaines and just prior to that occurring, the radio transmission from

21  the Front Desk stating that Rob want to see Rodrigo in his office and the fact that

22  Robert Snee knew the exact whereabouts of Dickey Gaines.

23

24  **(105).** The Pacific Hospitality Group, Inc., have a policy, regulation, practice, rule, usage,

25  custom and guideline, as enunciated in its Employee Handbook, which establishes a

26  grievance system for employees to use to complain about wrongdoing.

27

28  **(106).** The grievance process consist of filing a written complaint with the General

1  Manager and if unsatisfactory resolved an appeal can be lodged with the Director of

2  Personnel.

3

4  **(107).** On information and belief, Luis Barrios returned from a business trip to the Best

5  Western Hacienda Hotel on October 19, 2007, and Robert Snee being his right-hand

6  man, informed him of what had taken place, at least to the extent, of Rodrigo Garcia

7  gathering information concerning the criminal background of Dickey Gaines and

8  introducing it into the workplace.

9

10  **(108).** Luis Barrios did not take any affirmative steps to investigate and quell the

11  Rodrigo Garcia led confederacy for their individual and collective racist and

12  discriminatory practices and acts upon Dickey Gaines.

13

14  **(109).** Dickey Gaines had no recourse which would scrupulously honor a grievance

15  regarding the gale force winds of Mexican/Latino racism, discriminatory acts, taunting,

16  racial epithets, harassment and threatening actions, which he had to endure, since the on-

17  site management and Pacific Hospitality Group Inc., through imputation of knowledge

18  knew about what was happening, by virtue of Robert Snee's involvement/encouragement

19  and the actual and constructive knowledge of Brain Harkins of what was going on and

20  he was the Director of Personnel, but consciously failed to intervene.

21

22  **(110).** On October 29, 2007, nearing 12:00 noon, Dickey Gaines went to the Landscaping

23  Shop, completely fed-up with all of the racist and discriminatory acts and practices

24  directed at him, gathered his belongings and proceeded to the Housekeeping Department

25  to clock out for the day.

26

27  **(111).** En route to the Housekeeping Department, Dickey Gaines encountered a female

28  Housekeeping employee known as "Letti" and Dickey Gaines inquired whether Rodrigo

1  Garcia had mentioned anything bad about him. Letti informed Dickey Gaines that

2  Rodrigo Garcia had advised her and others that Dickey Gaines was a killer of two

3  people. Dickey Gaines posed the same inquiry to another female Housekeeping Employee

4  (her name is unknown to Dickey Gaines) and she related that Rodrigo Garcia had said

5  that Dickey Gaines is a killer of people.

6

7  **(112).** The Pacific Hospitality Group Inc., have a policy, regulation, practice, custom, rule

8  and guideline, implemented and promulgated within its Employee Handbook, which

9  unambiguously states:

10

11        "If you fail to call in or show up for three (3) consecutive days

12        you will be considered to have voluntarily quit at the close of business

13        on the third day." . . .

14

15  **(113).** Dickey Gaines "was not" absent from work for three (3) consecutive days,

16  therefore he could not have voluntarily quit, as clearly defined, within the Employee

17  Handbook. Furthermore, Dickey Gaines "never" signed any papers acknowledging that he

18  voluntarily quit and Dickey Gaines submitted no letter of resignation. Instead, Dickey

19  Gaines was subjected to a steady barrage of racist behavior/acts and discrimination which

20  forced his involuntary departure.

21

22  **THE TELEPHONE CALL AND MEETING OF OCTOBER 31, 2007**

23  **(114).** On the morning of October 31, 2007, Robert Snee called the residence of Dickey

24  Gaines and spoke with him. Robert Snee stated that "he learned Dickey Gaines had

25  clocked out on October 29, 2007, that Dickey Gaines was a good employee and that

26  Dickey Gaines should let the corporate office decide the matter about his criminal

27  background."

28

1  **(115).** Once again, Dickey Gaines informed Robert Snee that the timing of this criminal

2  background inquiry and the persistent harassment, discrimination and racist acts, smelled

3  of retaliation stemming from the suspension of Ramon Oaxaca. At this point, Robert

4  Snee said nothing! Subsequently, Robert Snee asked Dickey Gaines had he obtained

5  paperwork showing he was not the triggerperson. Dickey Gaines informed Robert Snee

6  that he would come to the hotel and drop off the paperwork.

7

8  **(116).** Robert Snee told Dickey Gaines that himself and Luis Barrios would like to

9  speak with him about everything that had happened.

10

11  **(117).** On October 31, 2007, upon arriving at the Best Western Hacienda Hotel, Dickey

12  Gaines observed Rodrigo Garcia and Greg Brownen standing in front of the hotel

13  conversing. Dickey Gaines handed a Spanish dictionary to Rodrigo Garcia and proceeded

14  toward the entrance of the Lobby. Dickey Gaines looked back in the direction of

15  Rodrigo Garcia and observed him making a gun pointing gesture (i.e., thumb and

16  forefinger extended) with his right hand aimed at Dickey Gaines.

17

18  **(118).** Dickey Gaines took the threatening hand gesture serious, especially since Rodrig

19  Garcia had previously bragged to Dickey Gaines that he had family members living in

20  Mexico and knew people connected with the Arellano-Felix drug cartel in Mexico and

21  can have favors done. Dickey Gaines was psychologically traumatized by the threatening

22  hand gesture.

23

24  **(119).** It is universally known that the Arellano-Felix drug cartel is a murderous group

25  of drug-dealing Latino thugs, widely known for their lawlessness, torturous ways,

26  rampant murderous acts and kidnappings.

27

28

**(120).** Once inside the Lobby, Dickey Gaines encountered Tammy (she is the secretary or administrative assistant to Luis Barrios) and handed her a manila envelope containing an Illinois Appellate Court published opinion. Dickey Gaines requested Tammy to make sure that Robert Snee receive the manila envelope.

**(121).** Tammy informed Dickey Gaines that Robert Snee is in a meeting, but definitely want to speak with you as well as Luis Barrios. Tammy asked Dickey Gaines, "could he wait around for a few minutes." Dickey Gaines replied, "yes."

**(122).** Robert Snee along with Luis Barrios emerged from the Prado Room. Luis Barrios said, "Dickey, I want to speak with you." Luis Barrios, Robert Snee and Dickey Gaines proceeded to the office of Luis Barrios.

**(123).** Luis Barrios, through consciousness of guilt, said to Dickey Gaines once inside his office:

> "Dickey, you have come a long way in your life; you are
> rehabilitating yourself, you are a good employee here at the hotel;
> you do not have to walk away from the job, as it is yours if you want
> it."

**(124).** Dickey Gaines informed Luis Barrios that a racially hostile working environment had been created by Rodrigo Garcia, as a direct result of Rodrigo Garcia retaliating for Ramon Oaxaca being suspended, by gathering information about Dickey Gaines criminal record and spreading such information to co-workers, thereby causing a racially inflammatory working environment with racial epithets being hurled, threats of physical bodily harm being made, incidents of spitting and derision.

1  (125). Dickey Gaines explained to Luis Barrios that coming back to work and Rodrigo

2  Garcia still being in a supervisory capacity over Dickey Gaines would inevitably lead to

3  more problems. Dickey Gaines further stated, "that it would be a never-ending journey

4  for Rodrigo Garcia to concoct stories, fabricate evidence and the like, all with design,

5  purpose and intent to facilitate Dickey Gaines' termination of employment and subject

6  Dickey Gaines to continuous invidious discrimination, mortification, racial slurs and

7  threatening behavior."

8

9  (126). Luis Barrios said, "Dickey, you have swam against big odds and succeeded, so

10  this would be nothing for you to swim against."

11

12  (127). Dickey Gaines said to Luis Barrios, "at the October 2, 2007 meeting where you

13  suspended Ramon Oaxaca, you specifically instructed Rodrigo Garcia to not cause a rift

14  between himself and Dickey Gaines." Luis Barrios retorted, "Dickey, you can swim

15  against it all."

16

17  (128). Luis Barrios asked Robert Snee, "how did all of this come about?" Robert Snee

18  replied, "it was Rodrigo Garcia."

19

20  (129). Robert Snee's revelation to Luis Barrios that Rodrigo Garcia was the culprit who

21  started everything, makes clear that he "deliberately lied" to Dickey Gaines on October

22  17, 2007, (**Par. 78-82, supra**) when he told Dickey Gaines that only himself and Brian

23  Harkins know about the criminal background of Dickey Gaines and will keep it

24  confidential.

25

26  (130). Dickey Gaines left the office of Luis Barrios and standing outside the door of the

27  Executive Office was Emy Eufracio and she said, "are you gone for good nigger, I hope

28  we get a younger and non-Black person to take your place." Dickey Gaines did not

1  respond and proceeded to walk out of the Lobby and go home.

2

3  ### AFFECTATION OF DICKEY GAINES' CONSTRUCTIVE DISCHARGE

4  **(131).** Dickey Gaines incurred economic devastation as a direct result of his constructive

5  discharge due to the creation of a hostile, intimidating and offensive working

6  environment.

7

8  **(132).** The constructive discharge on grounds of intentional racial discrimination resulted

9  in Dickey Gaines permanently losing a steady source of earned income; lost of medical

10  coverage to continue his physician diabetic care; inability to maintain ophthalmology

11  care; precluded establishment of a steady employment record; lost of continuity with

12  respect to earning social security work credits; lost of continuity with respect to payment

13  into state disability system; lost of continuity with respect to payment into the social

14  security system; lost of continuity with respect to payment into unemployment insurance

15  system; lost of continuity with respect to enjoyment of life; precluded from assisting

16  fiancee with payments for cancer treatments; precluded from establishing private

17  retirement account; precluded from building creditworthiness to secure a house and

18  vehicle; precluded from purchasing diabetic supplies and impeded ability to purchase

19  groceries on a regular pre-constructive discharge basis. The prospect of eviction looms

20  large.

21

22  **(133).** Dickey Gaines remains unemployed, even though, multitudes of faxes has been

23  sent to many prospective employers.

24

25  ### WRITTEN COMPLAINT SUBMITTED TO OWNER AND PRESIDENT

26  **(134).** On November 1, 2007, Dickey Gaines mailed a 13-page detailed, but not

27  exhaustive, written complaint to William McWethy and Fred Grand outlining some of the

28  things which took place at the Best Western Hacienda Hotel that ultimately led to the

RACIAL DISCRIMINATION SUIT - 28

1  constructive discharge of Dickey Gaines. Additionally, the 13-page written complaint was

2  "faxed" to the Office of the Pacific Hospitality Group Inc.

3

4                           **THE CORPORATE INVESTIGATION**

5  **(135).** Dickey Gaines received a one-page letter from Fred Grand dated November 6,

6  2007, which informed Dickey Gaines that an investigation at the corporate level was

7  opening in regards to issues raised in Dickey Gaines' November 1, 2007 letter.

8

9  **(136).** Fred Grand's letter further stated that Brian Harkins will be coordinating the

10 investigation and that a neutral third-party investigator will be retained. Fred Grand stated

11 that the accusations raised by Dickey Gaines will be taken seriously.

12

13 **(137).** Dickey Gaines mailed a four-page letter dated November 8, 2007, to Fred Grand

14 in response to his letter of November 6, 2007. Dickey Gaines disagreed with Fred

15 Grand's characterization of him resigning. Dickey Gaines stated that he involuntarily

16 departure the work place due to the hostile environment created by Rodrigo Garcia and

17 acquiescence by management.

18

19 **(138).** Dickey Gaines stated that the corporate investigation could not be reasonably

20 objective, since it would be coordinated by Brian Harkins and his hands are not clean,

21 as a result of him having actual and constructive knowledge of what was happening and

22 fail to do anything. Dickey Gaines questioned the impartiality and thoroughness of the

23 investigation

24

25 **(139).** Dickey Gaines declined to participate in the investigation as it was tainted with

26 Brian Harkins having oversight of the investigation as he became an accomplice to the

27 Rodrigo Garcia led confederacy through inaction and acquiescence.

28

1    **(140).** In November of 2007, Dickey Gaines received a telephone call from Debra Reilly,

2    who identified herself as an independent investigator hired by the Pacific Hospitality

3    Group Inc., to conduct an investigation into my complaint that was submitted to William

4    McWethy and Fred Grand.

5

6    **(141).** Dickey Gaines expressed concern to Debra Reilly about Brian Harkins'

7    involvement with the investigation, since he was a part of the scheme to bring about the

8    constructive discharge of Dickey Gaines at the hotel, in light of Brian Harkins'

9    actual and constructive knowledge of what was taking place and his failure to promptly

10    intervene and remedy the situation.

11

12    **(142).** Dickey Gaines received a one-page letter from Debra Reilly, via certified mail and

13    dated December 3, 2007, introducing herself as an independent neutral investigator.

14    Debra Reilly's letter inquired as to whether Dickey Gaines wanted to reconsider his

15    decision in terms of not participating in the investigation.

16

17    **143).** On December 5, 2007, Dickey Gaines sent Debra Reilly a 6-page letter, via

18    certified mail, basically explicating the emotional and mental anguish Dickey Gaines was

19    experiencing, as a direct result of the racist acts and discriminatory treatment imposed

20    upon Dickey Gaines by supervisors, coworkers and on-site management of the Best

21    Western Hacienda Hotel and sanctioned at the corporate level

22

23    **(144).** Dickey Gaines related to Debra Reilly of his attempt to seek out mental health

24    therapy as a result of what happened to him at the Best Western Hacienda Hotel.

25

26    **(145).** Dickey Gaines advised Debra Reilly that he was not going to reconsider his

27    position.

28

RACIAL DISCRIMINATION SUIT - 30

1  **(146).** At this stage, Dickey Gaines does not know what, if anything, such as disciplinary

2  measures being assessed against Rodrigo Garcia and his gang of co-conspirators; what

3  changes were instituted to prevent prospective occurrences of racial and discriminatory

4  acts as well as gathering of criminal history of employees and propagating it in the

5  workplace, etc.

6

7  **DICKEY GAINES SOUGHT MENTAL HEALTH THERAPY/COUNSELING**

8  **(147).** The racial epithets, offensive name-calling, threats of physical bodily harm,

9  intentional racial discrimination, campaign of harassment and management/corporate

10  indifference to hostile work environment, which culminated in the constructive discharge

11  of Dickey Gaines took its toll whereby Dickey Gaines sought out professional mental

12  health assistance.

13

14  **(148).** Dickey Gaines contacted Mark I. Levy who is a Forensic Psychiatrist, San Diego

15  County Mental Health Services, George J. Pratt of Scripps Memorial Hospital, Saul

16  Rosenberg, Clinical Psychologist at University of San Francisco, Carole Lieberman, M.D.

17  of Beverly Hills, California and others.

18

19  **(149).** The above-mentioned mental health professionals either referred Dickey Gaines to

20  other people or could not provide pro bono assistance to him.

21

22  **(150).** Dickey Gaines did not have the financial wherewithal to procure mental health

23  therapy/counseling, therefore, Dickey Gaines continues to suffer monumentally from the

24  pervasive ill-treatment imposed upon him while employed at the Best Western Hacienda

25  Hotel.

26

27

28

## DICKEY GAINES SOUGHT HARASSMENT RESTRAINING ORDER

**(151).** On November 6, 2007, Dickey Gaines filed an application for a harassment restraining order against Rodrigo Garcia in the Superior Court of California, County of San Diego – South County Division.

**(152).** The application for a restraining order flowed from the threatening hand gesture (**Par. 117-118, supra**) which Rodrigo Garcia directed at Dickey Gaines on October 31, 2007.

**(153).** A hearing was slated for December 6, 2007 on the application for a restraining order.

**(154).** Judge Edward P. Allard denied the application for a restraining order. An appeal is currently pending with the Court of Appeal - Fourth Appellate District

## DICKEY GAINES FILES COMPLAINT WITH EEOC

**(155).** On November 7, 2007, Dickey Gaines went to the Office of the Equal Employment Opportunity Commission (hereinafter "EEOC") and submitted a non-exhaustive written complaint in reference to the discrimination which Dickey Gaines had been subjected to at the Best Western Hacienda Hotel.

**(156).** Dickey Gaines spoke with an investigator at EEOC and a "Charge of Discrimination" bottomed upon race was filed against Pacific Hospitality Group Inc.

**(157).** On December 19, 2007, a mediation session was conducted at the Office of the EEOC. Present at the session was the EEOC mediator, namely Jose J. Dennis, Dickey Gaines, Brian Harkins and his legal representative, namely William Earley.

**(158).** A paltry monetary offer of settlement was made to Dickey Gaines, in which, Dickey Gaines flatly rejected it.

**(159).** During the latter part of February of 2007, Dickey Gaines spoke with an EEOC investigator, Carmen Ortiz and requested issuance of a "Notice of Right To Sue."

**(160).** Dickey Gaines received "Notice of Right To Sue" which is dated February 26, 2007. **(See, Exhibit B - Attached Hereto)**

## SYMBIOTIC RELATIONSHIP WITH STATE OF CALIFORNIA

**(161).** On information and belief, Pacific Hospitality Group Inc., have a contractual agreement with the State of California inasmuch as "leasing land" which the structure known as the 800 building of the Best Western Hacienda Hotel is situated upon, therefore, interdependence exist to form sufficient nexus to establish the "state action" requirement under Title 42 U. S. C. Section 1983.

**(162).** The State of California receives federal funding for many of its programs. However, federal law's proscription on funding applies to States and their entities who singularly or jointly engage in discrimination of any kind.

**(163).** The alleged contract brings Pacific Hospitality Group Inc., within the spectrum of being a state actor for 1983 purpose.

## FLAWED HIRING PRACTICE

**(164).** Pacific Hospitality Group Inc., knew or should have known that serious questions surrounded the fitness and managerial competence of Luis Barrios to be hired as general manager of the Best Western Hacienda Hotel due to his history of being fired, terminated, dismissed or compelled to resign from management positions at other hotels.



1   (165). Pacific Hospitality Group Inc., and William McWethy knew or should have known

2   that Emy Eufracio was unfit, lacked supervisory objectivity and competency to be

3   "head" of the Housekeeping Department at the Best Western Hacienda Hotel as

4   indicative of her termination, dismissal, resignation from duties and responsibilities at the

5   Hotel in Palm Springs, California, in which, William McWethy have an ownership stake.

6

7   (166). Pacific Hospitality Group Inc., knew or should have known that Greg Brownen

8   was psychologically and emotionally unstable to possess departmental managerial and

9   supervisory responsibilities in light of his dismissal, termination, or resignation from

10  employment at the LaJolla Beach & Tennis Club.

11

## LEGAL CLAIMS

### TITLE VII

### CONSTRUCTIVE DISCHARGE CLAIM – HOSTILE WORK ENVIRONMENT

15  (167).. Plaintiff realleges and incorporates, as if fully set forth herein, paragraphs 1

16  through 166.

17

18  (168). Pacific Hospitality Group Inc., by itself and/or through its managers, supervisors,

19  representatives and agents, intentionally and deliberately with reckless disregard of

20  plaintiff's federally protected rights, engaged in unlawful conduct that resulted in

21  tangible employment action, namely a constructive discharge, through an aggravated

22  campaign of pervasive racial enmity and a barrage of relentless harassment, which

23  produced a severe hostile work environment thereby creating an intolerable and abusive

24  workplace that seriously altered the conditions of employment for the plaintiff.

25

26  (169). Plaintiff is suing the defendants for the maximum amount allowable under the law,

27  in compensatory damages, to make plaintiff whole, for back pay, front pay and lost

28  benefits in lieu of reinstatement, emotional distress which plaintiff suffered, such as,

insomnia, headaches, economic worries, physical sickness, depression, shock, nervousness,

1  teeth grinding, dizziness, shame, fright and for schooling/vocational training to enable the
2  plaintiff to secure gainful employment.

3

4  **(170).** Plaintiff is suing the defendants for the maximum amount allowable under the law,
5  in punitive damages, to sufficiently punish the defendants for willful, malicious, reckless
6  indifference and conscious disregard of plaintiff's federally protected rights and to
7  adequately deter the defendants from future egregious conduct.

8

9  ## TITLE VII - DISPARATE TREATMENT BASED ON RACE
10  **(171).** Plaintiff realleges and incorporates, as if fully set forth herein, paragraphs 1
11  through 170.

12

13  **(172).** Pacific Hospitality Group Inc., by itself and/or through its managers, supervisors,
14  representatives and agents, knowingly, intentionally and with reckless indifference ignored
15  plaintiff's federally protected rights, by unlawfully subjecting the plaintiff to disparate
16  treatment, solely on account of race, insofar as punishing the plaintiff for reporting
17  employee misconduct, by virtue of creating a suffusive hostile and discriminatory work
18  environment, which resulted in the plaintiff being driven away from employment, but
19  defendants did not initiate such repugnant conduct toward similarly situated non-Black
20  employees that reported employee misconduct.

21

22  **(173).** The plaintiff is suing the defendants for the maximum allowable amount under the
23  law, in compensatory damages, as reasonable compensation, for mental anguish, emotional
24  distress, economic loss, physical sickness, deprivation of enjoyment of life, professional
25  counseling, schooling/vocational training to enable the plaintiff to secure gainful
26  employment.

27

28  **(174).** Plaintiff is suing the defendants for the maximum amount allowable under the law,
in punitive damages, as reasonable compensation, to effectively punish the defendants for

1 willful, malicious, reckless indifference and conscious disregard of plaintiff's federally

2 protected prerogatives and to deter the defendants from prospective flagrant conduct.

3

4 ### TITLE 42 U. S. C. SECTION 1981

5 ### INTENTIONAL RACE DISCRIMINATION

6 **(175).** Plaintiff realleges and incorporates, as if fully set forth herein, paragraphs 1

7 through 174.

8

9 **(176).** Pacific Hospitality Group Inc., by itself and/or through its managers, supervisors,

10 representatives and agents, intentionally embarked upon a course of racial discrimination

11 against the plaintiff, as a direct result of the plaintiff reporting gross and harmful

12 misconduct committed by a non-Black employee, which resulted in plaintiff, on account

13 of race, being wrongfully subjected to a well-orchestrated vindictive and abusive

14 work environment, that dramatically transformed the working conditions of the plaintiff,

15 in a highly antagonistic manner and was the pinnacle of plaintiff being driven away

16 from the workplace.

17

18 **(177).** Plaintiff is suing the defendants in the amount of two million **($2,000,000.00)**

19 in compensatory damages, as reasonable compensation, for enduring psychological pain,

20 emotional distress, physical sickness, humiliation, embarrassment, medical suffering,

21 economic loss, deprivation of enjoyment of life and prospective mental health treatment,

22 schooling and/or vocational training to increase the plaintiff chance of securing gainful

23 employment.

24

25 **(178).** Plaintiff is suing the defendants in the amount of three million **($3,000,000.00)**

26 in punitive damages, as reasonable compensation, to exact punishment upon defendants

27 for willful, malicious, reckless indifference and conscious disregard of the plaintiff's

28 federally protected rights and to deter the defendants from perpetrating future misconduct.

## TITLE 29 U. S. C. SECTION 623 ET SEQ

## AGE DISCRIMINATION IN EMPLOYMENT

(179). Plaintiff realleges and incorporates, as if fully set forth herein, paragraphs 1 through 178.

(180). Pacific Hospitality Group Inc., by itself and/or through its managers, supervisors, representatives and agents, intentionally with deliberate indifference of plaintiff's federally protected rights, engaged in the unlawful practice of age discrimination, through purposeful creation of a pervasive racially hostile and discriminatory work environment, which ultimately led to plaintiff being driven away from employment. Plaintiff was over 45 years of age and verbalization was expressed to plaintiff that painstaking effort would be put forth to hire a younger worker to fill plaintiff's work position.

(181). Plaintiff is suing the defendants in the amount of one million dollars ($1,000,000.00) in compensatory damages, as fair compensation, for humiliation, economic and benefits loss, excruciating mental/emotional pain and suffering, deprivation of enjoyment of life, physical sickness, future professional medical and mental health services, schooling and vocational training to enable the plaintiff to achieve gainful employment.

(182). Plaintiff is suing the defendants in the amount of two million dollars ($2,000,000.00) in punitive damages, as fair compensation, to meaningfully punish the defendants for willful, malicious, reckless and conscious disregard of plaintiff's federally protected rights and to efficaciously deter the defendants from subsequent unlawful conduct.

## TITLE 42 U. S. C. SECTION 1983

## FOURTEENTH AMENDMENT - EQUAL PROTECTION

(183). Plaintiff realleges and incorporates, as if fully set forth herein, paragraphs 1



1  through 182.

2

3  **(184).** Pacific Hospitality Group Inc., by itself, and/or through its managers, supervisors,

4  representatives and agents, acting under color of law, as state actors, by virtue of

5  contractual linkage, knowingly, intentionally and with conscious disregard violated

6  plaintiff's Fourteenth Amendment constitutional rights to equal protection of the laws,

7  inasmuch as freedom from race-based discrimination, in which, defendants purposefully

8  created a severe racially hostile and extensively abusive working environment against the

9  plaintiff, selectively mistreated on account of his race for reporting employeee

10  misconduct, whereby similarly situated non-Black employees were not mistreated upon

11  reporting employee misconduct, thereby constituting a disparity in treatment on the

12  impermissible basis of race. The mistreatment of the plaintiff resulted in him being

13  driven away from employment.

14

15  **(185).** The plaintiff is suing the defendants in the amount of one million dollars

16  **($1,000,000.00)** in compensatory damages, as fair compensation, for economic and

17  benefits loss, deprivation of enjoyment of life, mental pain and suffering, emotional

18  distress, depression, humiliation, future professional counseling and schooling/vocational

19  training to increase the likelihood of securing gainful employment.

20

21  **(186).** Plaintiff is suing the defendants in the amount of two million dollars

22  **($2,000,000.00)** in punitive damages, as fair compensation, to thoroughly punish the

23  defendants for willful, malicious, reckless and conscious disregard of plaintiff's

24  constitutional right and to deter the defendants from future unlawful encroachment.

25

26  **TITLE 42 U. S. C. SECTION 1985(3)**

27  **CONSPIRACY**

28  **(187).** Plaintiff realleges and incorporates, as if fully set forth herein, paragraphs 1

RACIAL DISCRIMINATION SUIT - 38

1 | through 186.

2

3 | **(188).** Brian Harkins, Luis Barrios, Robert Snee, Emy Eufracio and Greg Brownen,

4 | knowingly, intentionally and with reckless disregard, entered into a conspiracy with

5 | Rodrigo Garcia, by reaching an oral understanding to deprive the plaintiff of his

6 | constitutional right to equal protection of the law pursuant to the Fourteenth Amendment

7 | and federal statutory rights, to be exempted from race-based and age-based

8 | discrimination, by virtue of actively participating in Rodrigo Garcia's campaign to drive

9 | the plaintiff away from employment, by creating a pervasive racially hostile and abusive

10 | work environment conducive to the detriment of the plaintiff. Imputed knowledge of the

11 | conspiracy attributed to Fred Grand and William McWethy, since policymaking

12 | defendants (i.e., Brian Harkins and Luis Barrios) were representatives and agents of

13 | Pacific Hospitality Group Inc., but deliberately failed to crush the racist machination of

14 | Rodrigo Garcia.

15

16 | **(189).** Plaintiff is suing the defendants in the amount of one million dollars

17 | (**$1,000.000.00**) in compensatory damages, as fair compensation, for economic and

18 | benefits loss, depression, mental pain and suffering, emotional distress, physical sickness,

19 | humiliation, deprivation of enjoyment of life and future professional counseling.

20

21 | **(190).** Plaintiff is suing the defendants in the amount of two million dollars

22 | (**$2,000,000.00**) in punitive damages, as fair compensation, to substantially punish the

23 | conspiratorial evildoers for willful, malicious, reckless and conscious disregard of

24 | plaintiff's constitutional and federal statutory rights and to deter the defendants from

25 | future dastardly acts.

26

27

28

1

2

## TITLE 42 U.S.C. SECTION 1986

## NEGLECT TO PREVENT WRONGDOING

3    (191). Plaintiff realleges and incorporates, as if fully set forth herein, paragraphs 1

4    through 190.

5

6    (192). Fred Grand and William McWethy had the power to prevent the Rodrigo Garcia

7    led conspiracy, as mentioned in paragraphs 187-190, supra, from reaching its intended

8    aim, but knowingly and intentionally declined to intercede, punish the conspiratorial

9    wrongdoers, up to and including firing/termination and offer plaintiff restoration of

10   employment free from a hostile and abusive work environment. Instead, defendants

11   condoned, encouraged and ratified the action of the conspirators.

12

13   (193). The plaintiff is suing the defendants for the maximum amount pescribed under the

14   law.

15

16

## STATE LAW CLAIMS

## FAIR EMPLOYMENT AN HOUSING ACT

## GOVERNMENT CODE - SECTION 12900 ET SEQ

## RACE DISCRIMINATION BASED ON PUBLIC POLICY

17

18

19

20   (194). Plaintiff realleges and incorporates, as if fully set forth herein, paragraphs 1

21   through 166.

22

23   (195). Pacific Hospitality Group Inc., by itself and/or through its managers, supervisors,

24   representatives and agents, intentionally, deliberately and with reckless disregard of

25   California's public policy prohibition against race-based discrimination under Article 1 -

26   Section 8 of the California Constitution, Fair Employment And Housing Act and

27   regulations promulgated thereunder violated the law, by virtue of creating a pervasive

28   racially hostile and abusive work environment, on account of plaintiff race and because

RACIAL DISCRIMINATION SUIT - 40



1  of the plaintiff reporting employee misconduct, in which, the working conditions became

2  severely intolerable and led to the plaintiff being driven away from employment.

3

4  **(196).** Plaintiff is suing the defendants in the amount of two million dollars

5  **($2,000,000.00)** in compensatory damages, as fair compensation, for loss of income and

6  benefits, psychological pain and suffering, deprivation of enjoyment of life, humiliation,

7  depression, embarrassment, insomnia, anxiety, extreme emotional anguish, physical

8  sickness, future professional counseling, school/vocational training to enhance plaintiff's

9  ability to secure gainful employment.

10

11  **(197).** Plaintiff is suing the defendants in the amount of three million dollars

12  **($3,000,000.00)** in punitive damages, as fair compensation, for willful, malicious, callous

13  indifference and conscious disregard of established public policy barring race-based

14  discrimination and to discourage the defendants from committing future infractions.

15

16  ## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

17  **(198).** Plaintiff realleges and incorporates, as if fully set forth herein, paragraphs 1

18  through 166 and 194 through 197.

19

20  **(199).** Pacific Hospitality Group Inc., by itself and/or through its managers, supervisors,

21  representatives and agents, intentionally, deliberately and with malicious intent, subjected

22  the plaintiff to severe emotional suffering, as a direct result, of creating a racially

23  pervasive hostile and abusive work environment, due to plaintiff being of African

24  ancestry and reporting of employee misconduct, in which, plaintiff's work environment

25  became inensely intolerable and ultimately led to plaintiff being driven away from

26  employment. Defendants' conduct was intrusive, outrageous and adversely affected

27  plaintiff's emotional tranquility.

28



**(200).** Plaintiff is suing the defendants in the amount of one million dollars ($1,000,000.00) in compensatory damages, as fair compensation, for severe emotional suffering, loss of income and benefits, deprivation of enjoyment of life, physical sickness, humiliation, anxiety, embarrassment, future professional mental and emotional counseling and extreme anguish.

**(201).** Plaintiff is suing the defendants in the amount of one million dollars ($1,000,000.00) in punitive damages, as fair compensation, for willfully, intentionally and maliciously engineering an abominable plan and design to subject plaintiff to the infliction of emotional distress and to punish defendants from undertaking future unlawful conduct.

**FRAUD CLAIM**

**(202).** Plaintiff realleges and incorporates, as if fully set forth herein, paragraphs 1 through 166 and 194 through 201.

**(203).** Pacific Hospitality Group Inc., knowingly and intentionally perpetrated a fraud upon the plaintiff, by virtue of tendering an "Employee Handbook" to the plaintiff upon hiring, in which, the plaintiff relied upon the anti-retaliation provision of said handbook in conjunction with other proviso, explicitly directing all employeee to use common sense and exercise sound judgment, when plaintiff reported the misconduct of Ramon Oaxaca. The plaintiff's reporting of misconduct led to the creation of a pervasive racially hostile and abusive work enviroment that culminated in plaintiff being driven away from employment. The employee handbook did not shield plaintiff from racial discriminatory action.

**(204).** Plaintiff is suing the defendants in the amount of five hundred thousand dollars ($500,000.00) in compensatory and punitive damages, equally apportioned as fair

1  compensation, for loss of income and benefits, physical sickness, emotional suffering,

2  mental anguish, deprivation of enjoyment of life and to punish the defendant.

3

## NEGLIGENT RETENTION CLAIM

5  **(205).** Plaintiff realleges and incorporates, as if fully set forth herein, paragraphs 1

6  through 166 and 194 through 204.

7

8  **(206).** Pacific Hospitality Group, Inc., condoned, approved and ratified the unlawful

9  conduct of Rodrigo Garcia, Robert Snee, Luis Barrios and Brian Harkins, insofar as

10 having knowledge of their collective participation in creating a pervasive racially hostile

11 and abusive work environment against the plaintiff, on account of his race and due to

12 plaintiff reporting employee misconduct. Defendant made a conscious decision to retain

13 the above-named defendants despite their pernicious unlawful conduct.

14

15 **(207).** Plaintiff is suing the defendant in the amount of two million dollars

16 **($2,000,000.00)** in compensatory and punitive damages, equally apportioned as fair

17 compensation, for loss of income and benefits, physical sickness, emotional suffering,

18 mental anguish, deprivation of enjoyment of life as well as to punish the defendant.

19

## NEGLIGENT TRAINING AND SUPERVISION

21 **(208).** Plaintiff realleges and incorporates, as if fully set forth herein, paragraphs 1

22 through 166 and 194 through 207.

23

24
25 **(209).** Pacific Hospitality Group Inc., failed to properly train and supervise its managers,

supervisors, representatives and agents, with respect to employee rights under the Fair
26
Employment And Housing Act, as evident from the pervasive racially hostile and abusive
27
work environment that plaintiff was subjected which eventually resulted in the plaintiff
28

1    being driven away from employment, on account of his race and due to reporting of

2    employee misconduct.

3

4    **(210).** Plaintiff is suing the defendant in the amount of five hundred thousand dollars

5    **($500,000.00)** in compensatory and punitive damages, equally apportioned as fair

6    compensation, for loss of income and benefits, physical sickness, emotional suffering,

7    mental anguish, deprivation of enjoyment of life and to punish the defendant.

8

9                          **DEFAMATION**

10              **BASED ON SLANDEROUS STATEMENT**

11   **(211).** Plaintiff realleges and incorporates, as if fully set forth herein, paragraphs 1

12   through 166 and 194 through 210.

13

14   **(212).** Rodrigo Garcia knowingly, intentionally and with malicious intent defamed the

15   plaintiff, by virtue of verbally informing numerous co-workers that plaintiff had shot and

16   killed two men, in which, such statement was untrue and permanently damaged the

17   plaintiff's workplace reputation, which resulted in the plaintiff being driven away from

18   employment, due to the creation of a pervasive racially hostile and abusive work

19   environment spearheaded by Rodrigo Garcia.

20

21   **(213).** Plaintiff is suing Rodrigo Garcia for his tortious conduct, in the amount of one

22   million dollars **($1,000,000.00)** in compensatory and punitive damages, equally

23   apportioned as fair compensation, for loss of income and benefits, physical sickness,

24   emotional trauma and suffering, mental anguish, deprivation of enjoyment of life and to

25   punish the defendant.,

26

27                 **INVASION OF PRIVACY CLAIM**

28   **(214).** Plaintiff realleges and incorporates, as if fully set forth herein, paragraphs 1

RACIAL DISCRIMINATION SUIT - 44



1 | through 166 and 194 through 213.

2

3 | **(215).** Robert Snee knowingly, intentionally and with reckless disregard of plaintiff's
4 | privacy rights under the law, discussed and disclosed information pertaining to the
5 | plaintiff that was within employment personnel files kept in his office with Rodrigo
6 | Garcia, without any waiver of the plaintiff. Notably, plaintiff have a compelling interest
7 | in maintaining non-disclosure of information contained within employment personnel files.

8

9 | **(216).** Plaintiff is suing Robert Snee for his tortious conduct, in the amount of one
10 | million dollars **($1,000,000.00)** in compensatory and punitive damages, equally
11 | apportioned as fair compensation, for loss of income and benefits, physical sickness,
12 | emotional suffering, mental anguish, deprivation of enjoyment of life and to pnish the
13 | defendant.

14

15 | **NEGLIGENT HIRING CLAIM**

16 | **(217).** Plaintiff realleges and incorporates, as if fully set forth herein, paragraphs 1
17 | through 166 and 194 through 216.

18

19 | **(218).** Pacific Hospitality Group Inc., knew or should have known, after reasonable pre-
20 | hiring investigation, that Rodrigo Garcia, Luis Barrios, Emy Eufracio and Greg Brownen,
21 | by reason of their past employment histories rendered them individually unfit for
22 | managerial and supervisory positions, in all probability, such unfitness would lead to
23 | poor judgment, incompetent decisionmaking and concomitantly resulting in jury to
24 | workers, as exemplified, by the pervasive racially hostile and abusive work environment
25 | created to drive plaintiff from employment.

26

27 | **(219).** Plaintiff is suing the defendant in the amount of five hundred thousand dollars
28 | **($500,000.00)** in compensatory and punitive damages, equally apportioned as fair

1  compensation, for loss of income and benefits, physical sickness, emotional suffering,

2  mental anguish, deprivation of enjoyment of life and to punish the defendant.

3

4  ## PRAYER FOR RELIEF

5  **WHEREFORE,** the plaintiff, namely Dickey Gaines, respectfully request this

6  Honorable Court to enter the following orders:

7

8  **(i).** Allow plaintiff to proceed in forma pauperis due to his impecunious status

9

10  **(ii).** Allow plaintiff the opportunity to conduct discovery to obtain information and

11  records under the exclusive control of the defendants, as the allegations in this civil

12  complaint are likely to have evidentiary support after discovery and request for discovery

13  will be reasonably calculated to lead to additional factual and legal claims.

14

15  **(iii).** Allow plaintiff the opportunity to file an amended and/or supplemental complaint

16  after completion of discovery.

17

18  **(iv).** Allow plaintiff sufficient time after completion of discovery to file a dispositive

19  motion.

20

21  **(v).** Enter a declaratory judgment against the defendants.

22

23  **(vi).**Enter an order permanently enjoining the defendants from engaging in further

24  intentional race-based and age-based discrimination.

25

26  **(vii).**Award plaintiff costs for bringing this lawsuit inclusive of **$1.00** per word.

27

28  **(viii).** Award plaintiff pre-judgment and post-judgment interest at applicable statutory rate.

1  (ix). Award plaintiff attorney fees pursuant to Title 42 U.S.C. Section 1988 in relation

2  to federal claims and applicable state statutes for claims arising under State law.

3

4  (x). Award plaintiff any further relief deemed equitable and appropriate by this court.

5

6  I, Dickey Gaines, pursuant to Title 28 U.S.C. Section 1746 (2), declares under penalty

7  of perjury that the foregoing is true and correct except as to matter stated to be based

8  on information and belief.

9

10  Executed on: May 22, 2008

11

12

13

14

15

16

17

18

19

20                                    Respectfully Submitted

21

22                                    DICKEY GAINES (Pro Se)
                                      858 Beyer Way, Apt. K-2
23                                    San Diego, California 92154
                                      619.575.1079
24

25

26

27

28

RACIAL DISCRIMINATION SUIT - 47

# EXHIBIT A

**March 29, 2008 Article by Marcela Sanchez**

# EXHIBIT A

## Marcela Sanchez THE WASHINGTON POST

# A chasm between Latinos and blacks

During his well-publicized endorsement of Barack Obama, New Mexico Gov. Bill Richardson praised the presidential candidate for his candor about race. "As a Hispanic, I was particularly touched by his words," Richardson said, "Sen. Obama has started a discussion in this country long overdue and rejects the politics of pitting race against race."

Richardson is particularly concerned about what he called the "demonization" of Hispanics in this country. But the endorsement of a black politician by a Hispanic officeholder also reminds us that, more often than not, the tables have been turned in Latino views of African-Americans.

This could be having implications at the ballot box, as Hillary Clinton's Hispanic pollster Sergio Bendixen suggested in January when he noted that Latino voters have "not shown a lot of willingness or affinity to support black candidates." Clinton in fact has garnered two to three times more Latino voters than Obama in the presidential primaries.

Bendixen was quickly taken to task, and his assertion was dismissed by many who cited Obama's own election to the Senate in 2004 and many other elections in which Latino voters have shown no problem supporting black candidates. But it is clear to those who study race that there exists a chasm between Latinos and blacks.

Paula D. McClain, Duke University political science professor and co-director of the Center for the Study of Race, Ethnicity and Gender in the Social Sciences, has found that a majority of Latinos maintain stereotypical views about African-Americans. In the center's most recent survey of

*Sanchez can be reached via desdewash@washpost.com.*

**The racial views of Latino immigrants may not bode well for relations between the two largest U.S. minorities in the near term.**

blacks, whites and Latinos in Durham, N.C., Memphis, Tenn., and Little Rock, Ark., the majority of Latinos interviewed said they believe that all or almost all blacks are on welfare. Seventy-two percent of Latinos in Durham, for instance, said they believe this, eclipsing the 18 percent of whites who hold the same view.

"Clearly they are not getting this from whites," said McClain, who has concluded that Latino biases primarily come from their experiences in their countries of origin. "They are not coming into this country *tabula rasa*," she said, adding that "many come from Mexico where the government advertises that there is no racism . . . but we know that is not the case."

In fact, one might argue that there are two prominent types of racism among Latin Americans: against minority populations, including indigenous people or those of African descent; and prejudicial attitudes toward blacks in the United States.

While there were no official segregation laws as in the United States, everything but the white culture in Latin America was devalued to such a degree that the nonwhites often denied their own identity. The stigmatization of minority cultures made it easy for Latin American leaders to say they didn't have a race problem. But as more minorities began to recognize

themselves as such, often thanks to the support of activists in the United States, Latin American governments began to adopt policies acknowledging their historical discrimination and exclusion of ethnic and minority groups.

How American blacks have often been portrayed in movies and television also shapes the perception of Latin Americans, particularly in Mexico, by far the largest source of Latino immigrants to the United States. A few years ago, U.S. leaders condemned as racist a set of stamps portraying a dark-skinned character known as Memin Pinguin, reminiscent of hundreds of characters created in the United States from the end of slavery to the passage of the civil rights laws. Mexicans insisted that Memin was a beloved and likable character, but it was hard to disassociate the issue from President Vicente Fox's offensive language some weeks earlier about Mexicans doing jobs in the United States that "even blacks don't want."

The racial views of Latino immigrants may not bode well for relations between the two largest U.S. minorities in the near term. Rolando Roebuck, an Afro-Latino community activist in Washington, D.C., was especially pessimistic about what he described as the current clash between Latino immigrants' "serious streak of racism" and some blacks' "xenophobic attitudes" against those immigrants.

Yet Judith Morrison, former director of a Washington-based interagency consultation on race in Latin America, is more optimistic, precisely because the fastest-growing segment in the U.S. Latino population is Afro-Latino. They are mostly the children of Latinos and African-Americans who identify just as much with each group and who, according to Morrison, will be "bridging both cultures."

# EXHIBIT  B

**February  26,  2008  Notice  of  Right  To  Sue  Letter  From  EEOC**

# EXHIBIT B

EEOC Form 161-B (3/98)                 U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: Dickey Gaines | From: San Diego Local Office |
|---|---|
| 858 Beyer Way, Apt. K-2 | 401 B Street |
| San Diego, CA 92154 | Suite 510 |
| | San Diego, CA 92101 |

☐  On behalf of person(s) aggrieved whose identity is
    CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| | Carmen Ortiz, | |
| 488-2008-00074 | Investigator | (619) 557-7288 |

(See also the additional information enclosed with this form.)

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

☐  More than 180 days have passed since the filing of this charge.

☒  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒  The EEOC is terminating its processing of this charge.

☐  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

☐  The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

_Raul Green_                                                    2/26/2008

Raul G. Green,                                                  (Date Mailed)
Acting Director

Enclosures(s)

cc:     William Earley, Esq.
        Luce, Forward, Hamilton & Scripps
        600 West Broadway, Ste. 2600
        San Diego, CA 92101

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Dickey Gaines (PRO SE)

## DEFENDANTS
Pacific Hospitality Group, Inc.

2008 MAY 22 AM 9: 13
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

**(b)** County of Residence of First Listed Plaintiff  San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  San Diego
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

619. 575-1079

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
858 Beyer Way, Apt. K-2
San Diego, California 92154

Attorneys (If Known)
Unknown

08 CV 0907 DMS AJB

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☒ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Title 42 U.S.C. Section 2000E - Title 42 USC, Section 1981
Brief description of cause:
Intentional Race Discrimination, Inter Alia

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 26.2 million

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE                 DOCKET NUMBER

DATE  MAY 22, 2008

SIGNATURE OF ATTORNEY OF RECORD  Dickey Gaines

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

CC